**LOWE'S NORTH WILKESBORO HARD-WARE, INC., Appellant,**

v.

**The FIDELITY MUTUAL LIFE INSUR-ANCE COMPANY, Appellee.**

**No. 8756.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 23, 1963.

Decided June 13, 1963.

William D. Caffrey, Greensboro, N. C. (Welch Jordan, Greensboro, N. C., John Hall, and William McElwee, North Wilkesboro, N. C., on brief), for appellant.

Richard L. Wharton and C. R. Wharton, Greensboro, N. C. (Wharton, Ivey & Wharton, Greensboro, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and MICHIE, District Judge.

SOBELOFF, Chief Judge.

A problem in choice of laws is presented in this appeal from a decision of the United States District Court for the Middle District of North Carolina. The controversy is as to whether North Carolina or Pennsylvania law governs plaintiff's cause of action.

Lowe's North Wilkesboro Hardware, Inc., was designated primary beneficiary in an application for a $200,000 life insurance policy on the life of its president, Henry Carl Buchan, Jr. It brought suit in tort against Fidelity Life Insurance Co. for the face amount of the applied-for policy. The action was grounded on alleged negligent delay in acting upon the application, the proposed insured having died shortly after the insurance company declined to issue the $200,000 policy and offered a $50,000 policy which was accepted, but before the insurance company responded to the applicant's request to reconsider issuance of a policy in a larger amount. In the District Court, the defendant insurance company moved for summary judgment, premising its motion on the view that the acts constituting the alleged negligent delay occurred in Pennsylvania, the state of its principal office, and that thus the law of that jurisdiction was applicable under a proper interpretation of the North Carolina choice of law rule. While the parties were in disagreement as to the substantive law of North Carolina, it was not disputed that Pennsylvania law does not recognize a tort action for negligent delay in acting upon an application for a life insurance policy.

The District Court expressed the opinion that if North Carolina law applied, the alleged tort would be actionable; but since it agreed with the defendant that Pennsylvania law should govern this case, it granted the motion for summary judgment and dismissed the tort action. Plaintiff appeals from this judgment.[1] For the reasons we shall state, we affirm the District Court.

Henry Carl Buchan, Jr., and others associated with Lowe's Hardware, having determined that the time was favorable for an expansion of the business, entered into negotiations for a $2,000,000 loan. They learned that the Metropolitan Life Insurance Company was willing to lend this sum at favorable rates upon the condition that the borrower would procure insurance in that amount on the life of Buchan, its president. Applications were submitted to several insurance companies, each in the amount of $200,000. This was done in accordance with the customary practice in the insurance business of distributing the risk of a large amount of insurance on a single life, by allocating portions to several companies after informing each of the total insurance program sought.

On September 15, 1960, plaintiff's agent, in Washington, D. C., advised defendant's Vice-President-Agency, who also was in Washington, D. C., to expect an application for a $200,000 policy, and on September 22 the defendant's Vice-President-Agency so informed the home office in Pennsylvania. On September 30, defendant's Underwriting Department in Pennsylvania received a letter from its

[1] Plaintiff instituted three causes of action against defendant who moved for summary judgment on each cause. The first was in contract for $200,000, alleging the failure of the insurance company to fulfill its contractual obligation under a $200,000 life insurance policy; as to this cause, plaintiff conceded, before the motion was heard, that summary judgment should be granted. The second cause was in tort for $200,000, alleging that defendant negligently delayed acting upon the application for life insurance; as to this cause, the District Court granted the motion for summary judgment and this action is the basis of the present appeal. The third cause was in contract for $50,000, alleging that defendant issued and plaintiff accepted an insurance policy in this amount on the life of Henry Carl Buchan, Jr.; as to this cause, the District Court denied defendant's motion for summary judgment, but from that action the defendant has not appealed.

general agent in Washington, accompanied by Part One of the Buchan application for insurance, which had been filled out in North Carolina. Included was a detailed statement of plaintiff's insurance plan in connection with the $2,000,000 loan. Part Two of the application consisted of reports of the medical examinations, apparently made in North Carolina. One reached the defendant's Pennsylvania office on October 4 and another on October 6. Additional information deemed necessary to an evaluation of Buchan's acceptability as a risk was also received on October 4. Home office files and records were compiled between September 30 and October 3, and on the latter date the home office requested Retail Credit Company in North Carolina to make a credit inspection report on Buchan. On October 6 Retail Credit wrote to the defendant's office in Pennsylvania that there would be a slight delay in the preparation and delivery of the report.

On the preceding day, October 5, defendant had received copies of letters pertaining to Buchan's medical history, the originals of which had been directed to Connecticut Mutual, another of the prospective insurers. Further medical information from Connecticut Mutual was received at defendant's office on October 13. On the afternoon of the following day, October 14, a Friday, the inspection report itself reached the desk of P.A.D. Schuessler, the Underwriting Officer of defendant in the Pennsylvania office.

At the time the Buchan application was under consideration, Schuessler and his superior, A. H. Evans, Vice-President-Underwriting, were defendant's two officers having authority to pass upon life insurance applications. Both men had their offices at defendant's Pennsylvania headquarters, but only Evans could give final approval to applications in the amount of $100,000 or more.

Evans' responsibility included periodic field trips to defendant's general agents' offices. Travelling by car, Evans left the Pennsylvania office on October 15 intending to make several stops in the Midwest. Schuessler's only knowledge of Evans'

itinerary was that on October 18 Evans could be reached by telephone at the office of defendant's general agent in Dayton, Ohio. Lacking authority to act on the Buchan application because of its size, Schuessler telephoned to Dayton on October 18 to obtain Evans' opinion. Though expected that day, Evans had not arrived in Dayton when Schuessler called, but the next morning, October 19, Evans returned Schuessler's telephone call. At some length, the two reviewed Buchan's file, which by now included two items of information not previously available to Evans. The first was the Retail Credit Inspection Report the company had been awaiting. The other consisted of notes made during a lengthy telephone conversation on October 17, between Schuessler and an executive officer of Connecticut Mutual, during which they compared the Buchan files respectively maintained by the two companies. Evans and Schuessler reached the conclusion that the application for $200,000 should be declined, but they agreed to offer a $50,000 policy at standard rates.

Accordingly, the $200,000 policy was never issued but on the same day, October 19, a $50,000 policy was prepared and sent to defendant's Washington, D. C., agent, who on October 20 informed plaintiff's agent by telephone of this action. The latter agreed to accept on behalf of plaintiff the $50,000 policy, and at the same time requested defendant's Washington agent to endeavor to procure an increase in the amount of coverage with the company.

In North Carolina, on October 22 Henry Carl Buchan, Jr., died.

The facts have been set forth in detail in order to show as fully as the record discloses the places where the various actions, or alternatively stated, inactions, constituting the alleged tort occurred. We turn now to the legal question.

For the disposition of this case we may be obliged to decide either, but not both, of these questions: (1) whether North Carolina recognizes a cause of action for negligence in acting upon an application for life insurance; or (2) whether North

Carolina, the forum state, would, in the event of a conflict, apply its substantive law or that of Pennsylvania. Of course, if North Carolina does not recognize a cause of action of the kind alleged, there is no conflict of laws problem. But since there is no square holding in North Carolina recognizing or declining to recognize such an action, and the District Judge, who has had experience in North Carolina as a practitioner and on the state court bench, has expressed the view that North Carolina does recognize this type of action, we shall assume, without deciding, in accordance with his view that there is a conflict between the laws of North Carolina and Pennsylvania. In this situation we turn to the second of the questions above stated and, as this opinion will make obvious, it becomes unnecessary to decide whether North Carolina actually does recognize a cause of action for negligent delay.

█ █ We are to follow the choice of law rule prevailing in North Carolina, the state of the forum. Klaxon Company v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). There is no

North Carolina case directly in point, but we must nevertheless determine the rule that the North Carolina Supreme Court would probably follow, not fashion a rule which we, as an independent federal court, might consider best.

With respect to the tort here alleged, whether North Carolina under its choice of law rule would apply the law of Pennsylvania or its own law is not altogether clear, for the Supreme Court of North Carolina has not yet considered this or an analogous situation. When the North Carolina court has confronted a choice of law problem in a tort action, the action has usually been one for personal injury arising from a motor vehicle or train accident in another state, North Carolina being the forum because it was the domicile of the plaintiff in a diversity suit.[2] In those cases the court consistently applied the law of the state in which the accident occurred and the injury was suffered, that is to say, where all the activity constituting the basis of the alleged tort took place. But such cases do not seem to us to involve considerations analogous to the multi-state features presented here.[3]

2. Harper v. Harper and Wickham v. Harper, 225 N.C. 260, 34 S.E.2d 185 (1945), automobile collision in South Carolina; South Carolina law held applicable; Charnock v. Taylor, 223 N.C. 360, 26 S.E.2d 911, 148 A.L.R. 1126 (1943); Baird v. Baird, 223 N.C. 730, 28 S.E.2d 225 (1943), automobile accident in New York; New York law held applicable; Russ v. Atlantic Coast Line Railroad, 220 N.C. 715, 18 S.E.2d 130 (1942), train struck plaintiff in Virginia; Virginia law held applicable; Hale v. Hale, 219 N.C. 191, 13 S.E.2d 221 (1941), automobile accident in Virginia; Virginia law applied with no comment; Farfour v. Fahad, 214 N.C. 281, 199 S.E. 521 (1938), automobile accident in Virginia; Virginia law applied with this statement: "Since the alleged negligent act or omission of duty, *and* [emphasis added] the injury consequent thereupon, occurred in the State of Virginia, the liability of the defendants, if any, must be judged by the laws of that State."; Rodwell v. Camel City Coach Co., 205 N.C. 292, 171 S.E. 100 (1933), bus accident in Georgia; Georgia

wrongful death statute applied; Wise v. Hollowell, 205 N.C. 286, 171 S.E. 82 (1933), automobile accident in Virginia; Virginia law held applicable; Howard v. Howard, 200 N.C. 574, 158 S.E. 101 (1931), automobile accident in New Jersey; New Jersey law held applicable; Harrison v. Atlantic Coast Line, 168 N.C. 382, 84 S.E. 519 (1915), train accident in Virginia; Virginia law held applicable; and Harrill v. South Carolina & Georgia Extension Railway Co., 132 N.C. 655, 44 S.E. 109 (1903) train accident in South Carolina; South Carolina law applied.

3. Cf. Putnam v. Triangle Publications, 245 N.C. 432, 96 S.E.2d 445 (1957); Note, 35 N.C.L.Rev. 535, 540 (1957).
   We find only two cases factually similar from other jurisdictions; they reach different conclusions, but neither expounds the reasons for the decision. Killpack v. National Old Line Insurance Co., 229 F. 2d 851 (10th Cir. 1956), applying the law of the home office of the insurance company; and Mann v. Policyholders' National Life Ins. Co., 78 N.D. 724, 51 N.

Nor has the North Carolina court in its choice of law decisions involving single state torts set forth the theoretical basis of its rulings, so as to shed light on our problem. A short statement in Charnock v. Taylor, 223 N.C. 360, 26 S.E.2d 911, 148 A.L.R. 1126 (1943), furnishes the only word of explanation we have found, and it offers no assistance in the determination of what the North Carolina choice of law rule in the instant case would be.

In failing to formulate the reasons for applying the law of a foreign forum, the North Carolina court has not differed from other jurisdictions; and even in multi-state torts courts have with few exceptions merely chosen whatever rule seemed reasonable for the particular case under adjudication, without attempting to formulate the reasons for selecting that rule. Scholars and commentators have had little more success in providing guidelines for choosing the proper and just rule.[4] Against every rule applied and every proposal made great clouds of criti-

cism have been raised, and each commentator appears to have a different "best" solution for the difficulty.[5] The applicable rules for a conflicts law of torts have constantly changed in the ceaseless search for a just and fair resolution of the problem.[6]

█ Thus, favored with few guides and observing that even the validity of these is obscured by substantial criticism, we find it most reasonable, in these circumstances, to avoid a rigid rule and to pursue instead a more flexible approach which would allow the court in each case to inquire which state has the most significant relationships with the events constituting the alleged tort and with the parties. The relative weight due particular factors will vary from case to case, and the court must judge the totality of contacts of the states concerned with the parties and the subject matter. Having thus determined which state has the most significant relationships, the court then will apply the law of that jurisdiction.[7]

W.2d 853 (1952), applying the law of the forum which was also the plaintiff's domicile.

4. "Despite the keen insight and illuminating analyses offered by some scholars, that appears to be the net effect of the rather large amount of recent learned writing in the field. After reading the articles, one understands the problem a great deal better, but he is no nearer to the answer unless he has been converted to one or another of the controversial views set out in them." Leflar "Choice of Law: Torts: Current Trends," 6 Vand.L.Rev. 447, 457 (1953).

5. See, e. g., Cook, "Tort Liability and the Conflict of Laws," 35 Columbia Law Review 202 (1935), and Lorenzen, "Tort Liability and the Conflict of Laws," 47 L.Q.Rev. 483 (1931). Of the more recent literature see, e. g., Goodrich, "Yielding Place to New: Rest versus Motion in the Conflicts of Laws," 50 Colum.L.Rev. 881 (1950); Rheinstein, "The Place of Wrong: A Study in the Method of Case Law," 19 Tul.L.Rev. 4 (1944); Morris, "The Proper Law of a Tort," 64 Harv. L.Rev. 881 (1951); Harper, "Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen's Essays," 56 Yale L.J. 1155 (1947); Ehrenzweig, "The Place of Acting in

Multistate Intentional Torts: Law and Reason Versus the Restatement," 36 Minn.L.Rev. 1 (1951); Cavers, "The Two 'Local Law' Theories," 63 Harv.L. Rev. 822 (1950); and Weintraub, "A Method for Solving Conflicts Problems— Torts," 48 Cornell L.Q. 215 (1962).

6. "In the short span of one century the conflicts law of torts has run the gamut from the basic lex fori; through a lex actus affording the defendant protection under the law under which he acted; through a new lex loci securing to the plaintiff protection under his own law against the hazards of foreign enterprise; through the merger of these two unrelated principles in a dogma of a lex loci delicti localized at the place of the harm rather than at that of the conduct * * *; to a new division between admonitory liabilities based on the lex actus, and compensatory liabilities serving the distribution of accident loss." Ehrenzweig, Conflict of Laws (1962) p. 596.

7. A more flexible approach is increasingly urged, and The American Law Institute has under consideration a proposal to modify the rigid rule set out in Restatement of the Law, Conflict of Laws, §§ 377 and 378 (locating the place of the tort "as the place of the wrong" and the place of the wrong "as the state where

It cannot be said that there existed between the present parties an established relationship having a particular location; there were only preliminaries looking to the creation of a relationship. But if these preliminaries themselves should be viewed as a relationship of a kind, the question is, where did it center?

Plaintiff stresses that Buchan's residence in life and the place of his death were in North Carolina, that there the plaintiff was engaged in business, and that plaintiff sustained there the loss caused by the alleged tort. It is of course true that, in addition to the defendant's conduct complained of, an injury must be shown to have resulted before tort liability can arise. It does not follow, however, that because plaintiff was domiciled in North Carolina and Buchan lived and died there, the tort complained of happened in that state. It would seem to make no difference in this case if Buchan had died elsewhere. Scarcely can the mere fact that the proposed insured lived in North Carolina be highly significant. This circumstance is reduced almost to the point of irrelevancy in comparison with the events which occurred in Penn-

sylvania. And while the domicile of the plaintiff corporation merits consideration, it cannot be accorded dominant importance in fixing the location of the tort.

The important events upon which liability, if any, would rest occurred in Pennsylvania. It is to the home office of defendant in Pennsylvania that the application was sent; all information relative to the policy was obtained through or sent to the Pennsylvania office. Only there could an application for a policy of the size desired be acted upon; and in that place the application was rejected and an offer of a $50,000 policy made. In sum, it was in Pennsylvania that the alleged delay, the foundation of the cause of action, took place. The fact that the application form was completed in North Carolina before its transmission to Pennsylvania does not loom large against the events in Pennsylvania so intimately related to the alleged delay. For these reasons we conclude that Pennsylvania, rather than North Carolina, has the more significant relationships, and the law of Pennsylvania should be applied.[8]

Pennsylvania does not recognize a cause of action for negligent delay in

the last event necessary to make an actor liable for an alleged tort takes place") by framing a new section which makes applicable the law of the state "which has the most significant relationship with the occurrence and with the parties." Certain factors in the relationship that should be considered are suggested.

Some courts have already adopted a freer approach than that of the original Restatement. See, e. g., Grant v. McAuliffe, 41 Cal.2d 859, 264 P.2d 944 (1953) (opinion by Justice Traynor); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957); Haumschild v. Continental Casualty Co., 7 Wis.2d 130, 95 N.W.2d 814 (1959); Bowles v. Zimmer Manufacturing Company, 277 F.2d 868, 76 A.L.R.2d 120 (7th Cir. 1960); cf. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1961); Vrooman v. Beech Aircraft Corp., 183 F.2d 479 (10th Cir. 1950). Most recently, the New York Court of Appeals in Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), explicitly adopted the proposed revision of the Restatement.

8. From the conflict of laws decisions of the North Carolina court it is clear that it will, within limitations, not refuse to apply the law of another forum. See particularly statements in Wise v. Hollowell, 205 N.C. 286, 171 S.E. 82 (1933); Rodwell v. Camel City Coach Co., 205 N.C. 292, 171 S.E. 100 (1933); Howard v. Howard, 200 N.C. 574, 158 S.E. 101 (1931). The type of law that the North Carolina court would decline to apply is suggested in Howard v. Howard: "Application of the principle that foreign laws will not be given effect when contrary to the settled public policy of the forum is often made in a certain class of cases, such, for example, as prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquor, and others." Supra at 104 of 158 S.E. Since the case now before the court is not of the classes suggested in Howard v. Howard, it would not seem to offend the public policy of North Carolina to look to Pennsylvania law.

acting upon an insurance policy.[9] The District Court was correct in granting defendant's motion for summary judgment.

Affirmed.

9. Zayc v. John Hancock Mutual Life Ins. Co., 338 Pa. 426, 13 A.2d 34 (1940); Shipley v. Ohio National Life Insurance Co., 199 F.Supp. 782 (D.C.Pa.1961), aff'd, 296 F.2d 728 (3d Cir. 1961).