M. G. FABRICIUS, administrator of estates of WARREN PEDERSON, MARCELLA PEDERSON, LAURINE I. OLSON and LLOYD L. OLSON, deceased, appellee, v. LUCILLE J. HORGEN, administratrix of estate of VIRGIL D. HORGEN, appellant.

(Four cases consolidated)

No. 51558.

(Reported in 132 N.W.2d 410)

JANUARY 12, 1965.

Brown, Dresser, Kinsey & Jolas, of Mason City, for appellant.

Sams & Dunkelberg, of Osage, for appellee.

SNELL, J.—Four cases involving identical procedural and substantive questions under the laws of Minnesota and Iowa have been consolidated for the purpose of an authorized interlocutory appeal.

On October 26, 1963, Warren Pederson, Marcella Pederson, his wife, and Laurine I. Olson, the wife of Lloyd L. Olson, were passengers in an automobile owned and operated by Lloyd L. Olson. They were traveling in a northerly direction on U. S. Highway No. 218 in Mower County, Minnesota. They were residents of Iowa.

At about the same time and place Virgil D. Horgen, also a resident of Iowa, was driving his automobile in a southerly direction. The Olson and Horgen cars collided. The two respective drivers and the three passengers in the Olson car were killed.

M. G. Fabricius has been appointed by the District Court of Mitchell County, Iowa, administrator of the estates of Warren Pederson, Marcella Pederson, Laurine I. Olson and Lloyd L. Olson. Lucille J. Horgen has been appointed by the District Court of Mitchell County, Iowa, administratrix of the estate of Virgil D. Horgen and as such is defendant herein.

M. G. Fabricius as administrator in Iowa brought four separate actions in Iowa based on alleged wrongful death of his

respective decedents seeking recovery from the administratrix of the estate of Virgil D. Horgen.

We have, therefore, an Iowa administrator of estates of Iowa residents seeking recovery in Iowa from the Iowa administratrix of a deceased Iowa resident on causes of action arising in Minnesota.

Plaintiff, in his petitions, alleged actionable negligence on the part of Virgil D. Horgen, proximate cause and plaintiff's decedents' freedom from contributory negligence. For the purpose of the problems now before us we assume as facts the matters so pleaded.

Mr. and Mrs. Pederson were survived by three minor children who are next of kin.

Mr. and Mrs. Olson were survived by four minor children who are next of kin.

In each action plaintiff alleges damage suffered by decedents' next of kin and seeks recovery for the damage suffered by the next of kin pursuant to section 573.02 of the statutes of the State of Minnesota.

Plaintiff also seeks recovery of the funeral expense in each instance.

In the Lloyd L. Olson case plaintiff also seeks recovery for the value of the wrecked automobile.

Defendant in each case moved to dismiss for the reason that there is no authority under the law of Iowa that would establish legal liability of defendant to the minor children or heirs of plaintiff's decedent. Defendant argues that the only cause of action against defendant would be under the applicable wrongful death statutes of this state and plaintiff's action is not grounded thereon.

The motions to dismiss were overruled. Defendant in each action obtained leave and has appealed.

I. Plaintiff in these actions seeks recovery pursuant to section 573.02, Statutes of Minnesota. This statute provides as follows:

"Action for death by wrongful act. Subdivision 1. When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision

2 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. The action may be commenced within three years after the act or omission. The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, shall not exceed $25,000, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery·and orders distribution accordingly. Funeral expenses and any demand for the support of the decedent, other than old age assistance, allowed by the court having jurisdiction of the action, are first deducted and paid.

"If an action for such injury was commenced by the decedent and not finally determined during his life, it may be continued by the trustee for recovery of such damages for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court on motion shall make an order allowing such continuance and directing pleadings to be made and issues framed as in actions begun under this section.

"Subd. 2. Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivision 1, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein. The trustee, before commencing his duties shall file his consent and oath. Before the trustee shall receive any money, he shall file a bond as security therefor in such form and with such sureties as the court may require.

"Subd. 3. This section shall not apply to any death or cause of action arising prior to its enactment, nor to any action or proceeding now pending in any court of the state of Minnesota."

This is a wrongful death statute for the benefit of those dependent on the decedent and follows the philosophy of Lord Campbell's Act.

The statutory law of Iowa is found in section 611.20, Code of Iowa. This statute provides:

"Actions survive. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."

■ This is a survival statute preserving a right of action but it does not create a new action. To the extent that it saves an action from abatement it is in derogation of the common law.

We recently reviewed the difference between statutes patterned after Lord Campbell's Act and our survival statute in Cardamon v. Iowa Lutheran Hospital, 256 Iowa 506, 128 N.W.2d 226, wherein we said:

"At common law there was no right of action for wrongful death. There was a right of action for damages for personal injury, but the death of the plaintiff pending the suit abated the same. * * *.

"Dissatisfaction with the common-law rule was extensive but it was a situation best cured by legislation. The first change was by legislative action in England through enactment of what is known as Lord Campbell's Act in 1846. This statute created a new right of action in favor of certain classes of persons and against the wrongdoer for damages resulting to them from wrongful death.

"Legislation having a similar general purpose soon followed in our country. Iowa in 1851 was among the first to act. There are, however, fundamental differences between the statutes following Lord Campbell's Act and the Iowa statute.

"The distinction is clear. The acts while having the same remedial purpose differ in their provisions, their theory and application.

"The beneficiaries are different. Under the English Act the action is brought by and for the parent, child or spouse. Under our Act it is by and for the decedent's estate.

"The measure of damage is different. Under the English Act the measure of damage was the injury suffered by the parent, child, wife or husband, to be divided among them as the jury might direct.

"Under our law the measure of damage is the loss to the estate. * * *.

"Our survival statute, section 611.20, Code of Iowa, is our alternative to the creation of a new cause of action under Lord Campbell's Act and comparable wrongful death statutes patterned thereon." (Loc. cit. pages 519 and 520 of 256 Iowa, pages 234 and 235 of 128 N.W.2d)

In the case before us we have an Iowa administrator, an officer of the Iowa court, seeking recovery in behalf of persons having no cause of action in Iowa and asking for recovery with a measure of damage not in accord with our law.

Plaintiff is not a person authorized under the law of Minnesota to bring an action. Section 573.01, Statutes of Minnesota, provides:

"Survival of causes. A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02. It also dies with the person against whom it exists, except a cause of action arising out of bodily injuries or death caused by the negligence of a decedent survives against his personal representatives. All other causes of action by one against another, whether arising on contract or not, survive to the personal representatives of the former and against those of the latter."

Plaintiff is in a rather anomalous situation. With the death of plaintiff's decedents the causes of action arising therefrom died in Minnesota except as provided in section 573.02. A new cause of action by a trustee was authorized. Plaintiff is not such a trustee. There is no claim that he has ever been appointed or qualified as such. He is an Iowa administrator representing decedents' estates. There is no claim that he is a proper person to maintain such an action in Minnesota and in Iowa he is attempting to recover for persons having no cause of action here and on a measure of damage not in accord with our law.

Under Minnesota law recovery would be for the benefit of next of kin and distributable proportionate to the pecuniary loss severally suffered.

Under section 635.9, Code of Iowa, 1962 (now section 336, chapter 326, Acts of Sixtieth General Assembly), damages re-

covered are disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a spouse, child or parent, are exempt from debts. Distribution as other personal property in an estate may be but is not necessarily proportionate to the pecuniary loss suffered by a next of kin. The fact that in the cases at bar the distribution might be the same under either method is merely fortuitous and not because of comparable provisions of the laws.

II. Few current problems have inspired more writing by eminent scholars than Conflict of Laws or as it is called by some writers "Choice of law."

The basic rules have been recognized in Iowa for many years. In Dorr Cattle Company v. Des Moines National Bank, 127 Iowa 153, 98 N.W. 918, 4 Ann. Cas. 519, decided in 1905, it was held that the right to sue for tort, the liability of the perpetrator, and the defenses that he may plead are with few exceptions governed by the law of the place, i.e., the lex loci delicti. (Loc. cit. 161) Matters of procedure and the remedy to be applied are to be determined by the law of the forum. (Loc. cit. 162) The authorities and conflicting rules were reviewed and the rule that damages are to be assessed according to the lex fori was approved. (Loc. cit. 165)

In Kingery v. Donnell, 222 Iowa 241, 245, 268 N.W. 617, 619, it is said: "It is equally well settled that matters of procedure and matters pertaining to the remedy to be applied are to be determined by the law of the forum."

The basic rule in most jurisdictions is stated in Restatement of the Law, Conflict of Laws, by American Law Institute, section 391, as follows: "The law of the place of wrong governs the right of action for death." This rule creates no problem in the case at bar. If the basic elements, i.e., actionable negligence, proximate cause and freedom from contributory negligence are established someone would have a cause of action against the defendant in either Minnesota or Iowa. The differences are in who has the right to sue and in the measure of damage in the respective jurisdictions.

Section 394, Restatement, Conflict of Laws, says: "If the death statute of the state of wrong designates a particular person

as the one to sue upon the cause of action, such person may sue in any state."

Assuming, but not deciding because the issue is not before us, that under this rule a trustee appointed under the provisions of section 573.02, Statutes of Minnesota, might bring an action in Iowa, there is no help therein for plaintiff. No one in the capacity of a trustee appointed in Minnesota is a party to the actions here. The only plaintiff we have here is an Iowa administrator appointed by an Iowa court and as such representing an Iowa estate.

III. The traditional choice of law rule, embodied in the original Restatement of Conflict of Laws and followed in many jurisdictions, has been that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the law of the place of the tort. Babcock v. Jackson, 12 N. Y.2d 473, 240 N. Y. S.2d 743, 191 N.E.2d 279, 95 A. L. R.2d 1 (1963); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (October 1964), and authorities cited therein.

This place of injury or lex loci delicti rule has been the subject of severe criticism in recent years. See authorities cited on page 801 of 203 A.2d, Griffith v. United Air Lines, Inc., supra.

Although the same reasons are not stated it would appear that the Iowa rules expressed in the Dorr Cattle Company and Kingery cases, both supra, are with a few exceptions more nearly in accord with latest expressions on the subject.

The trend toward an improvement of the traditional rule is noted in Restatement of Conflict of Laws, Second, Tentative Draft No. 9, section 379, wherein the general principle is stated as follows:

"The General Principle.

"(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.

"(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

"(a) the place where the injury occurred,

"(b) the place where the conduct occurred,

"(c) the domicil, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

This rule recognizes the most significant relationship with the occurrence and parties and important contacts as more properly controlling than "wooden application" (an expression used by some writers) of the strict lex loci delicti rule.

In the cases before us the most significant relationships are in Iowa and the important contacts are in Iowa. The accident happened in Minnesota and the question of actionable negligence depends on the law of Minnesota. Otherwise, the place of the accident is merely fortuitous. Minnesota has little, if any, interest in the present controversy. Minnesota has no conceivable interest in the remedy available to Iowa people against an Iowa defendant, in Iowa courts, arising because of acts tortious under both Minnesota and Iowa law. Minnesota would have an interest in the manner in which the cars were driven at the time of the accident but that is not the issue here.

The parties are residents of Iowa. No one in Minnesota has the slightest interest in these cases.

The parties have invoked the jurisdiction of the court in their home county and state. If there is recovery it will be by an Iowa plaintiff acting as an officer of the Iowa court for the benefit of Iowa people and from an Iowa defendant.

The most recent judicial pronouncements coming to our attention that thoroughly examine the problem are Babcock v. Jackson, supra, decided by the Court of Appeals of New York in 1963 and Griffith v. United Air Lines, Inc., supra, decided by the Supreme Court of Pennsylvania on October 14, 1964.

In the Babcock case plaintiff and defendant were residents of New York. Plaintiff was a guest in defendant's car. While driving in Ontario plaintiff was injured. An Ontario guest statute would have barred her recovery there. New York had no such bar to recovery. Plaintiff sued in New York. A motion to dismiss

based on the lex loci delicti doctrine was sustained and on appeal reversed. The court reviewed the judicial authorities and the writings of eminent scholars and concluded with this statement at page 484 of 12 N. Y.2d, 752 of 240 N. Y. S.2d, 285 of 191 N.E.2d, 10 of 95 A. L. R.2d:

"In conclusion, then, there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented."

In the Griffith case an executor sought recovery for the death of his decedent in an airplane crash in Colorado. Decedent, a Pennsylvania domiciliary, purchased a ticket for a flight from Philadelphia to Phoenix, Arizona, and return. The plane crashed in Denver and decedent was killed. Under Colorado law recovery would have been small. Under Pennsylvania law recovery might be substantial. The crux of the litigation was in the differing measures of recovery. Under the Pennsylvania survival statute recovery could be for the present worth of decedent's likely earnings during his life expectancy diminished by the probable cost of maintenance for himself and family. The measure of damage is in many ways comparable to ours.

Plaintiff brought an action in assumpsit in Pennsylvania alleging negligent breach of contract of carriage. The nature of the action (assumpsit) was challenged but the court said: "* * * the recovery sought is clearly a tort recovery—damages to decedent's estate as a result of decedent's negligently caused death. The principles which will govern defendant's liability are principles of negligence, not of contract, since the action is for negligent breach, not simple breach, of contract. * * * The essentials of this case remain the same regardless of its label. Mere technicalities of pleading should not blind us to the true nature of the action. The choice of law will be the same whether the action is labeled trespass or assumpsit." (Loc. cit. 800 of 203 A.2d)

The authorities from various jurisdictions, texts and articles on the subject were exhaustively reviewed. The court concluded that the Colorado limitation on recovery did not preclude recovery in Pennsylvania. The court said at pages 805, 806, 807 of 203 A.2d:

"Thus, after careful review and consideration of the leading authorities and cases, we are of the opinion that the strict lex loci delicti rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court. * * *

"The state in which injury occurred, as such, has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule. Moreover, where the tort is unintentional, the reliance argument is almost totally untenable. [Citation] This is abundantly clear in the present case; the site of the accident was purely fortuitous.

"Ordinarily, the place of the injury may have an interest in the compensation of those who render medical aid and other assistance to the injured party. However, where death is immediate, as on the present facts, that state has no such interest. * * *

"Pennsylvania's interest in the amount of recovery, on the other hand, is great. * * * Our Commonwealth, the domicile of decedent and his family, is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected ·earnings. * * *

"[T]he law of Pennsylvania is properly applicable to the issue of damages."

IV. We conclude that the better and more modern rule is that the determination as to the existence of actionable negligence is according to the law of the jurisdiction where the claimed tort occurred, in this instance, Minnesota. Questions as to who may maintain an action in Iowa, for whom, and the measure of damage are determined by the law of the forum, in this instance, Iowa. When an Iowa administrator brings an action in the Iowa courts for the benefit of Iowa people and against an Iowa defendant his standing, his methods of procedure and his meas-

ure of damage are according to Iowa law. To use the modern term he has made his "choice of law" and must abide thereby. The Iowa Guest Statute and the dissimilarity with Minnesota law in this particular is not involved in the case before us.

As an Iowa administrator plaintiff has legal standing and capacity to sue in Iowa. He has pleaded causes of action maintainable in Iowa in behalf of decedents' estates. Recovery would be distributable according to the law of Iowa and the measure of damage is according to Iowa law. As an Iowa administrator he does not have the capacity or rights of a Minnesota trustee.

V. Defendant in each case moved to dismiss and in the alternative to strike. Plaintiff's petitions were vulnerable to the motions to strike rather than to dismiss. The trial court overruled the motions to dismiss but the rulings, if any, on the motions to strike do not appear in the record before us.

Plaintiff as administrator in Iowa is a proper party plaintiff to bring and maintain an action for the wrongful death of his decedents. The court had jurisdiction of the parties and jurisdiction to determine the liability of defendant and to whom and the amount thereof. Improper allegations as to whose benefit recovery would inure and pleading of unrecognized measures of damage were not fatal to plaintiff's right to stay in court. If the improper matters were stricken plaintiff, under the rules, should have a reasonable time within which to amend. Failure to amend and plead according to Iowa law would make the actions subject to dismissal.

The orders of the trial court overruling the motions to dismiss are affirmed. The cases are remanded to the trial court for ruling on the motions to strike and such further proceedings as are in harmony herewith.—Affirmed and remanded for further proceedings.

All JUSTICES concur.