Fuld, J. (dissenting).
In the light of this court’s decision in Babcock v. Jackson (12 N Y 2d 473), I cannot understand how an affirmance may here be justified. The view expressed by the majority is inconsistent not only with the rationale underlying Babcock but with the rule there explicitly stated, that the law to be applied to resolve a particular issue in a tort case with multi-jurisdictional contacts is ‘ ‘ the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern” with the matter in issue and “ the strongest interest” in its resolution (12 N Y 2d, at pp. 481, 484).[1]
The rule thus announced is not, and does not profess to be, a talisman of legal certainty, nor does it of itself provide a formulary means for resolving conflicts problems. What it does provide is a method, a conceptual framework, for the disposition of tort cases having contacts with more than one jurisdiction. Although the majority in this case reaffirms Babcock’s abandonment of the prior inflexible rule of lex loci delicti, its decision, névertheless, in essence, reflects the adoption of an equally mechanical and arbitrary rule that, in litigation involving a special relationship, controlling effect must be given to the law of the jurisdiction in which the relationship originated, notwithstanding that that jurisdiction may not have the slightest concern with the specific issue raised or that some other state’s relationship or contact with the occurrence or the parties may be such as to. give it the predominant interest in the resolution of that issue.[2]
There is, indeed, no material distinction between the factual situation here presented and that in the Babcock case, and the very same considerations which there impelled us to select as controlling the law of New York, rather than that of the place of *130 injury, are equally decisive here. In each case, suit was brought in this State by one New Yorker against another for injuries sustained in another jurisdiction while riding as a guest in a vehicle registered, regularly based and insured in New York. And, in both cases, there was in effect in the foreign jurisdiction a statute which, unlike the law of New York, barred claims of this kind by the guest against the host based on ordinary negligence.[3] In Babcock, the plaintiff was injured when the defendant lost control of his automobile and it went off the highway and into an adjacent stone wall; in the case before us, the defendant, failing to observe a stop sign, collided with another car operated by a resident of Kansas and apparently registered in that state. The only other difference between the cases is that in Babcock the guest-host relationship originated in New York and the parties’ trip began and was to end in this State, whereas in the present case that relationship arose in Colorado where the parties were temporarily residing—though they both returned to their homes in New York shortly after the accident.
It was our endeavor in Babcock to identify, in the first instance, the policies embodied in the particular laws in conflict, then to ascertain the interests of the jurisdictions involved in the application of their respective policies in view of their contacts with the case and, by such process, to determine which jurisdiction had “ the superior claim for application of its law ” (12 N Y 2d, at p. 483; see, also, Cavers, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1219,1221). Ontario’s contact there consisted solely of the occurrence of the accident within its territory, and we concluded that that contact was not a 1 ‘ significant ” one, as respects the issue of liability of host to guest, since the policy reflected in its guest statute — the protection of Ontario defendants and their insurance carriers against fraudulent claims — had no relevant application to an accident involving New York parties and a New York-insured vehicle in which no Ontario defendant or insurer had any interest. In *131 other words, the fact that the accident happened in Ontario was not a contact which gave that jurisdiction a legally cognizable interest in having its policy applied to the case. New York’s contacts, on the other hand, gave it a vital interest in the application of its strong and long-standing policy ‘‘ of requiring a tortfeasor to compensate his guest for injuries caused by his negligence ” (12 N Y 2d, at p. 482).[4]
Nothing turns on the circumstance that in this case the guest-host relationship was formed in the foreign jurisdiction. It seems indisputably clear that a jurisdiction may be said to be ‘1 concerned ’ ’ with a specific issue, if that term is to have any meaningful content, only when its governmental interests and policies enter into the making of a particular decision. Accordingly, the decisive consideration, in the present case, is that Colorado’s guest statute, paralleling Ontario’s, has as its prime objective the protection of Colorado driver-defendants and their insurance carriers against fraudulent claims and lawsuits. (See, e.g., Vogts v. Guerrette, 142 Col. 527, 534; Bashor v. Bashor, 103 Col. 232, 237-238; see, also, Shea v. Olson, 185 Wash. 143,154-155, cited in the Vogts case, 142 Col., at p. 534.) Manifestly, that policy of Colorado can in no way be served by applying its statute to an action, such as the present, which is brought in New York and involves not residents of Colorado or their insurance carriers but only New Yorkers and a New York based and insured vehicle. The mere fact that the guest-host relationship between the New York parties originated in Colorado has, in truth, as little relevance to the policy underlying that state’s guest statute and, by that token, as little bearing on that statute’s applicability as did the fact, in Babcock, of the occurrence of the accident in Ontario in relation *132 to the similar policy embodied in its guest statute. Under the circumstances of the present case, then, Colorado, to paraphrase what we wrote in Babcock, “has no conceivable interest in denying a remedy to a New York guest against his New York host for injuries suffered in [Colorado] by reason of conduct which was tortious under [Colorado] law” (12 N Y 2d, at p. 482).
Nor is the majority’s position advanced by its further suggestion (opinion, p. 124) that the Colorado statute also reflects (1) an antipathy on the part of Colorado to suits by “ungrateful” guests (see Dobbs v. Sugioka, 117 Col. 218, 220) and (2) a policy to assure “ the priority of injured parties in other cars in the assets of the negligent defendant.” Indeed, as regards the latter asserted policy, there does not appear to be any Colorado pronouncement even to intimate that the Colorado Legislature was motivated by any such objective. In any event, though, Colorado would be legitimately concerned with the application of these alleged policies only in relation to matters within its legislative competence, such as the burdens of the Colorado courts, the regulation of the affairs and relationships of Colorado citizens or the protection of Colorado claimants or insurers. (Cf. Fabricius v. Horgen, 132 N. W. 2d 410, 415 [Iowa]; Thompson v. Thompson, 105 N. H. 86; Griffith v. United Air Lines, 416 Pa. 1, 24-25; Comment, 77 Harv. L. Rev. 355, 357-358.) Whether such considerations might be of significance in particular circumstances not here present, they certainly have no relevance in the contest of this suit between New York domieiliaries in a New York court, in which no burden is being imposed on the Colorado courts and no citizen of Colorado appears to be in any way interested. The majority’s emphasis on the involvement of another vehicle in the accident (opinion, pp. 124-125) is thus misplaced since the other automobile was driven by a resident from Kansas and was apparently licensed in that state.
New York, on the other hand, just as in Babcock, as the permanent residence of the plaintiff and the defendant and the place to which they returned to live shortly after the accident, has a predominant interest in vindicating its own policy of requiring negligent driving hosts to compensate their injured guests. It is apparent that the consequences resulting from an *133 uncompensated injury generally affect the community in which the injured party resides, in this case, New York. If a plaintiff who returns to live here after sustaining injuries in another state requires additional medical treatment, as is usually the case, or is unable to meet his normal economic commitments and becomes a public charge, it is the people of New York—whose services will go uncompensated and whose tax dollars will be charged in the form of welfare payments — who will feel the repercussions of such • eventualities and not the distant and unconcerned residents of the state of injury, where a guest-host relationship between the New York parties may have been formed. (See, e.g., Cheatham, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1229, 1230; cf. Griffith v. United Air Lines, 416 Pa. 1, 24-25, supra.) There is thus no question but that Colorado’s “contacts”, though quantitatively greater than those of Ontario in Babcock, are still not “ significant ” as respects the specific issue presented and that the “contacts” of New York in relation to that issue are decidedly superior.
No one of the cases cited in the court’s opinion — among them, Mertz v. Mertz (271 N. Y. 466), involving husband and wife; Matter of Nashko v. Standard Water Proofing Co. (4 N Y 2d 199), involving employer and employee; and Kilberg v. Northeast Airlines (9 N Y 2d 34), involving carrier and passenger — supports its view that conclusive effect must be given, in a case involving a special relationship, to the law of the place where the relationship arose. As examination of each of those cases readily discloses, this court applied the law of one jurisdiction rather than that of the other not per se because the relationship between the parties originated in that jurisdiction but because analysis of all the material facts demonstrated that the latter had the more compelling interest in the application of its law to the matter in issue. (See Babcock v. Jackson, 12 N Y 2d 473, 479-481, supra.)
Nor is my conclusion as to the superiority of New York’s claim for the application of its law in this case in any way grounded—'as suggested in the majority opinion (p. 124) — on a “ quantitative ” assessment of the contacts of the respective jurisdictions, or on the decisive effect of any single such factor as domicile or the public policy of this State. Rather, the essential inquiry is, and has been, to determine *134 whether it is Colorado or New York which has “ the greatest concern with the specific issue raised in the litigation.” (Babcock v. Jackson, 12 N Y 2d 473, 481, supra.) It is clear that in this case it is New York which has the predominant concern and, consequently, it is the law of this State, not Colorado, which should be applied.
In conclusion, then, I would say, as did the court in Babcock (12 N Y 2d, at p. 482), that “ New York’s policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence cannot be doubted * • * * and our courts have neither reason nor warrant for departing from that policy simply because the accident, solely affecting New York residents and arising out of the operation of a New York based automobile, happened beyond its borders ’ ’.
The order of the Appellate Division should be reversed and the judgment of the. Supreme Court reinstated.

. See, also, Cavers et al., Comments on Babcock v. Jackson, 63 Col. L. Rev. 1219 et seq.; Comment, 62 Mich. L. Rev. 1358; New Trends in the Conflict of Laws, 28 Law & Contemp. Probs. 673 et seq.

. Although the court at one point in its opinion (p. 125) purports to disclaim sole reliance on “ the physical situs where the relationship was created ” — declaring, rather ambiguously, that such factor must be taken “in conjunction with the general intent of the parties” — this statement cannot conceal that it is the place where the relationship originated which the majority treats as decisive.

. The Ontario statute (in Babcock), which completely barred the claims of a guest-passenger, differs from that of Colorado, which permits recovery on a showing of " willful and wanton ” conduct, but this distinction, as indicated in the Babcock case (12 N Y 2d, at p. 484, n. 14), is of no consequence for present purposes.

. To the plaint that the concepts, “ significant contacts ”, “ center of gravity ” and “interests of the respective states ”, are mere “ catchwords ” (opinion of Desmond, Ch. J., p. 135), I would but recall Professor Cheatham’s telling observation (in discussing the use of such expressions) that they are “at least as adequate to define a principle of law as the terms ‘due process of law, ‘ property,’ ‘ reasonableness,’ and ‘ unjust enrichment,’ which the courts constantly employ” (Cheatham, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1229, 1230-1231) — and, I would add, as adequate as “ traditional notions of fair play ” and “ substantial justice ” used by the Supreme Court in International Shoe Co. v. Washington (326 U. S. 310, 316, 320) and McGee v. International Life Ins. Co. (355 U. S. 220, 222).