Mary Kate **BRENDLE**, Administratrix of the Estate of William Charles Brendle, Deceased, Appellant,

v.

The **GENERAL TIRE AND RUBBER COMPANY**, Appellee.

No. 12918.

United States Court of Appeals Fourth Circuit.

Argued Feb. 6, 1969.

Decided March 10, 1969.

John Haworth, High Point, N. C. (Charles E. Nichols, Greensboro, N. C., and William G. Pfefferkorn, Winston-Salem, N. C., on brief), for appellant.

Martin N. Erwin and Beverly C. Moore, Greensboro, N. C. (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

█ In this suit by a North Carolina plaintiff against an Ohio defendant, arising from a truck accident in Missouri, the sole issue on appeal is which state's law governs the case. Since federal jurisdiction here depends on diversity of citizenship, the applicable law must be determined by the choice of law rules of the forum state, North Carolina. Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

On September 13, 1965, William Brendle, a North Carolina resident, was injured in an accident in Lafayette County, Missouri, while he was driving a truck for his employer, a North Carolina corporation. He died a week later from his injuries. The accident allegedly was caused by a blowout of the truck's right front tire, which had been made in Ohio by the defendant, General Tire and Rubber Company, and had been sold to Brendle's employer in North Carolina by a North Carolina subsidiary of General Tire.

The plaintiff, as administratrix of Brendle's estate, sued General Tire to recover for the medical expenses and pain and suffering resulting from Brendle's injuries before death, and for his subsequent wrongful death. She stated two theories of recovery for each cause of action—negligent design and manufacture of the tire which blew out, and breach of the implied warranty of the tire's fitness for use.

General Tire moved for summary judgment on both causes of action. Its position was and is that since the accident occurred in Missouri, Missouri

law governs the suit. Under that state's law, there is no surviving cause of action for medical expenses or pain and suffering attributable to injuries which subsequently caused the tort victim's death.[1] There is a cause of action for wrongful death, but under the Missouri statute the proper party to sue in this case would be the decedent's minor children rather than his personal representative.[2] Both of plaintiff's causes of action were therefore defective under Missouri law.

The District Court concluded that the North Carolina Supreme Court would apply Missouri law to determine the controversy insofar as it involved questions of negligence since North Carolina adheres to the choice of law rule of *lex loci delicti* in tort actions.[3] The court therefore awarded summary judgment for General Tire on the portion of each cause of action alleging negligence. As to the remaining allegations of breach of warranty, the court denied summary judgment without prejudice to the defendant to renew its motion.

From the entry of summary judgment as to negligence the plaintiff appeals.[4] She concedes that summary judgment is proper if Missouri law is applicable, but she maintains that the District Court erred in concluding that a North Carolina court would apply Missouri law in the circumstances of this case.

The appellant admits

> that in all decided cases of which we are aware, the North Carolina Court has in cases arising from motor vehicle accidents applied the law of the state where the accident occurred to

determine the rights of the parties as to both liability and damages.

She advances the contention, however, that the present situation is distinguishable from the usual motor vehicle case. First, as she notes, any negligence of the present defendant occurred not in Missouri, where the accident took place, but in Ohio where the tire was made. Since the Missouri "rules of the road" are therefore not relevant to the case, the appellant declares that there is no reason to apply Missouri law. Second, she points out that the case involves two different theories of recovery, negligence and breach of warranty, which are subject to inconsistent choice of law rules. In negligence cases, North Carolina courts apply the law of the place of the wrong. Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E.2d 278 (1965). In warranty cases, on the other hand, the applicable law is that of the state where the merchandise was sold, here North Carolina. Price v. Goodman, 226 N.C. 223, 37 S.E.2d 592 (1946). Under Missouri law—applicable to a negligence case—the plaintiff's complaint states no cause of action, while under North Carolina law—applicable to warranty questions—it states causes of action for both personal injury and wrongful death. The appellant therefore contends that a North Carolina court would resolve the inconsistency by holding that one state's law should govern the entire litigation. She argues that the appropriate governing law in this case would be that of North Carolina, which is not only the forum but also has the most significant

1. Mo.Rev.Stat. § 537.020 (1959); Smith v. Preis, 396 S.W.2d 636 (Mo.1965).

2. Mo.Rev.Stat. § 537.080 (1959). The statute provides that if the husband or wife of the decedent fails to sue within six months after death, the decedent's minor children must bring the suit. The present suit was instituted a year after death.

3. Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E.2d 278 (1965). The traditional *lex loci* rule is that tort actions are governed by the law of the

place of the wrong, which is "the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement of Conflict of Laws § 377 (1934).

4. Although a summary judgment affecting only part of a cause of action is not a "final decision" appealable under 28 U.S.C. § 1291, the District Court in this case certified, pursuant to 28 U.S.C. § 1292(b), that a final determination of the issue by the Court of Appeals prior to trial would promote an orderly trial.

contacts with the parties and transactions involved in the suit.

In presenting her argument, the appellant relies heavily on the opinion of this court in Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Life Ins. Co., 319 F.2d 469 (4th Cir. 1963), another diversity suit in which North Carolina was the forum state. That case involved an alleged negligent delay by a Pennsylvania insurance company in acting upon an application for an insurance policy. While acknowledging our obligation to follow North Carolina's choice of law rules, we there noted that the North Carolina Supreme Court had never decided a case involving "considerations analogous to the multi-state features presented here." 319 F.2d at 472. Accordingly, we concluded:

> [W]e find it most reasonable, in these circumstances, to avoid a rigid rule and to pursue instead a more flexible approach which would allow the court in each case to inquire which state has the most significant relationships with the events constituting the alleged tort and with the parties. *Id.* at 473.

The plaintiff cogently argues that in the present case a similar approach would be adopted by the North Carolina court.

Clearly, the present litigation is not an appealing one in which to apply the *lex loci* rule. Missouri has no real connection with either the alleged tortious conduct or the various parties involved in the litigation. It is the "place of the wrong" only in the special sense that "the last event necessary to make an actor liable" occurred in that state. The fact that the accident happened there was completely fortuitous. No Missouri

traffic law was violated, and no Missouri resident was involved. The alleged negligence occurred in Ohio, and any damages awarded in the suit would be paid by an Ohio corporation. The decedent's estate is being administered in North Carolina, where his surviving dependents reside. Therefore, whether the purpose of tort law in this situation is to admonish the tortfeasor or to compensate the tort victims,[5] Missouri has no interest in having its law govern the case, and North Carolina has no reason to apply Missouri law rather than its own, the law of the forum.

Because Missouri law on the issues involved here differs from both North Carolina and Ohio law in a number of important respects, adherence to the *lex loci* rule would materially affect the results of the litigation. Missouri law requires a wrongful death action to be brought by the decedent's widow or minor children, limits recovery for wrongful death to $25,000 and bars recovery for the decedent's expenses and pain and suffering before death.[6] Under North Carolina or Ohio law, the decedent's personal representative is the proper party plaintiff in a wrongful death action, wrongful death damages are unlimited, and there is a surviving cause of action for the pre-death expenses and pain and suffering.[7] Missouri's more restrictive law thus clearly conflicts with the forum state's interest in assuring its residents, the decedent's dependents, adequate compensation for injury or death, and yet the result of applying Missouri law furthers no interest of that jurisdiction.

Faced with comparable factual situations, modern courts have shown a tendency to forego rigid adherence to the

5. It has been suggested that when a tort rule's primary purpose is to deter or punish misconduct, the state where the conduct took place may have the greatest interest in applying its own law, while if the purpose of a rule is primarily compensatory, the state where the plaintiff resides has the greater interest. Restatement (Second) of Conflict of Laws § 145, comment c (Proposed Official Draft, May 1, 1968). *See generally* A.

Ehrenzweig, Conflict of Laws § 212 (1962).

6. Mo.Rev.Stat. §§ 537.020, 537.090, 537.080 (1959).

7. Page's Ohio Rev.Code §§ 2125.01, 2125.-02 (1954); Adams v. Malik, 106 Ohio App. 461, 155 N.E.2d 237 (1957); N.C. Gen.Stat. §§ 28–172, 28–173; In re Peacock, 261 N.C. 749, 136 S.E.2d 91 (1964).

*lex loci* rule.[8] The main advantage of the traditional rule, ease in determining the law to be applied, seems to afford an unconvincing reason for adhering to the rule, "since it is obviously of greater importance that choice of law rules lead to desirable results."[9] In seeking desirable results, therefore, many courts have abandoned mechanical rules and have instead selected the appropriate law by relying on forum policy,[10] analyzing governmental interests,[11] or determining which state has "the most significant relationship" with the litigated matter.[12] Whatever the difficulties attendant upon such flexible approaches to choice of law,[13] courts are at least free to make a reasoned choice among potentially applicable rules of decision.

In Lowe's North Wilkesboro Hardware v. Fidelity Life Ins. Co., 319 F.2d 469 (1963), we addressed ourselves to a situation not clearly governed by any of North Carolina's traditional choice of law rules. We therefore concluded that the North Carolina Supreme Court, having regard for the modern trend, would likely apply the law of the state having "the most significant relationships with the events constituting the alleged tort and with the parties." 319 F.2d at 473. The test adopted in *Lowe's*, which is in essence that urged by the Restatement (Second) of Conflicts (Proposed Official Draft), requires a court to assess a state's contacts with a case in the light of the particular issues to be decided.[14]

8. Nineteen jurisdictions have abandoned the *lex loci* rule in whole or in part. Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (admiralty); Williams v. Rawlings Truck Line, Inc., 123 U.S.App.D.C. 121, 357 F.2d 581 (1965); Watts v. Pioneer Corn Co., 342 F.2d 617 (7th Cir. 1965) (Indiana); Merchants Nat'l Bank & Trust Co. v. United States, 272 F.Supp. 409 (D.N.D.1967); Zucker v. Vogt, 200 F.Supp. 340 (D.Conn.1961), aff'd, 329 F.2d 426 (2d Cir. 1964); Armstrong v. Armstrong, 441 P.2d 699 (Alaska 1968); Reich v. Purcell, 67 Cal. 2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Wessling v. Paris, 417 S.W.2d 259 (Ky.1967); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Mitchell v. Craft, 211 So.2d 509 (Miss.1968); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 95 A.L.R.2d 1 (1963); Casey v. Manson Constr. & Eng'ring Co., 247 Or. 274, 428 P.2d 898 (1967); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Woodward v. Stewart, 243 A.2d 917 (R.I.1968); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965). For the reactions of leading conflicts commentators to this recent trend, see Comments on Babcock v. Jackson, 63 Colum.L.Rev. 1219 (1963); Comments on Reich v. Purcell: A Symposium, 15 U.C.L.A.L.Rev. 551 (1968).

9. Restatement (Second) of Conflict of Laws § 6, comment j (Proposed Official Draft, May 1, 1968).

10. *See* Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). Professor Ehrenzweig states that choice of law is always a question of forum policy, since there is no "superlaw" which compels choice of law rules. Conflict of Laws §§ 3, 103 (1962).

11. *See* Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). For a concise statement of this approach, formulated by Brainerd Currie, see Comment on Babcock v. Jackson, 63 Colum. L.Rev. 1233, 1242–43 (1963).

12. *See* Wessling v. Paris, 417 S.W.2d 259 (Ky.1967); Casey v. Manson Constr. & Eng'ring Co., 247 Or. 274, 428 P.2d 898 (1967). *See* Restatement (Second) of Conflict of Laws § 145 (Proposed Official Draft, May 1, 1968).

13. Courts which have refused to utilize any of the new approaches have apparently been deterred by the lack of guidance which they provide in making specific decisions. *See, e. g.,* Friday v. Smoot, 211 A.2d 594 (Del.1965); White v. King, 244 Md. 348, 223 A.2d 763 (1966).

14. Section 145 of the Restatement draft states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the oc-

In the present instance, the particular issues affected by the choice of law process are the survival of the cause of action for personal injuries, the proper party plaintiff for the wrongful death action, and the amount of damages recoverable for wrongful death. Since there is no conflict between the laws of North Carolina and Ohio on these issues, the relevant choice lies between North Carolina and Missouri law.

As to all three issues, it seems clear that North Carolina has the most significant relationship with the parties and the events. The questions of survival and the proper party plaintiff primarily affect administration of the estate, which is proceeding in North Carolina.[15] The issue concerning limitation of damages most directly touches the compensation of the decedent's beneficiaries, who are North Carolina residents.[16] Although a limit on damages also protects defendants from excessive judgments, the defendant in this case is an Ohio corporation which undoubtedly carries liability insurance in conformity with the Ohio statute allowing unlimited damages. By applying its own law to the case, therefore, a North Carolina court would further the interests of its own residents without running counter to the reasonable expectations of the defendant.

■ Use of forum law, as the appellant urges, seems by far the more reasonable course. Unfortunately for the plaintiff's contention, however, we are not free to fashion our own choice of law rule, for we are bound by the decisions of the North Carolina Supreme Court. In *Lowe's*, we were presented with a factual situation and a legal question never faced by the North Carolina court, and we could conclude that it would have decided the case as we indicated, adopting a flexible approach in order to deal adequately with the special multi-state features of the case. Here, however, the North Carolina decisions clearly reveal the unqualified adherence of the North Carolina Supreme Court to the *lex loci* rule in cases involving personal injury or wrongful death, without regard to whether the accident involved a breach of local traffic rules.

In a personal injury case decided two years after our decision in *Lowe's*, the North Carolina Supreme Court specifically declined an invitation to abandon the *lex loci* rule and adopt the "most significant relationship" test as set forth in *Lowe's*.[17] Similarly, in a recent wrongful death case, the North Carolina court applied the law of the state where the fatal injury occurred although neither party to the suit was a resident of that state. Broadfoot v. Everett, 270 N.C. 429, 154 S.E.2d 522 (1967). In terms of the traditional rule, "the place of the wrong" here complained of was Missouri, since the injuries were sustained there. See Farmer v. Ferris, 260

---

currence and the parties under the principles stated in § 6.

Professor Ehrenzweig has criticized both the formulation and its particular application in *Lowe's*. The Second Conflicts Restatement: A Last Appeal for its Withdrawal, 113 U.Pa.L.Rev. 1230 (1965); The "Most Significant Relationship" in the Conflicts Law of Torts, 28 Law & Contemp.Prob. 700 (1963) (discussing *Lowe's*).

15. *See* Grant v. McAuliffe, 41 Cal.2d 859, 264 P.2d 944, 42 A.L.R.2d 1162 (1953) (survival determined by law of state where estate administered); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965) (state of administration applied own law to determine proper party plaintiff).

16. *See* Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967) (damages law of state of estate administration applied); Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964) (law of state where estate administered and suviving dependents resided applied).

17. Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E.2d 278 (1965). The court had earlier explained its position as follows:

We do not deem it wise to voyage into such an uncharted sea, leaving behind well established conflict of laws rules. Shaw v. Lee, 258 N.C. 609, 129 S.E. 2d 288, 293 (1963).

N.C. 619, 133 S.E.2d 492 (1963). The appellant has not persuaded us that the Supreme Court of North Carolina would be prepared to recognize a significant difference between this case and its above adjudications.

█ It is therefore our obligation to follow the rule declared in those cases and apply Missouri law.

The summary judgment must accordingly be

Affirmed.