Thomas Lowell **LINDEN, Jr., Plaintiff,**

v.

**CNH AMERICA LLC d/b/a Case Construction Equipment, and Indiana Mills & Manufacturing, Inc., a/k/a IMMI, Defendants.**

No. 3:09–cv–00019–JEG.

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 26, 2010.

John M. Bickel, Shuttleworth & Ingersoll, Cedar Rapids, IA, John Paul J. Gatto, Daniel A. Haws, Murnane Brandt, St. Paul, MN, for Defendants.

Douglas C. Dumont, Warshauer Poe Thornton P.C., Atlanta, GA, Thomas L. Staack, Chad Andrew Swanson, Dutton Braun Staack & Hellman PLC, Waterloo, IA, for Plaintiff.

### ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on a motion for summary judgment, filed August 18, 2009, by Defendant Indiana Mills

& Manufacturing, Inc. (IMMI).[1] Plaintiff Thomas Lowell Linden, Jr. (Linden) resists the motion. A hearing was held on December 11, 2009. The matter is fully submitted and ready for disposition.

## I. SUMMARY OF MATERIAL FACTS [2]

IMMI is an Indiana corporation with its principal place of business in Westfield, Indiana. IMMI designed and manufactured the seat belt that was installed on the dozer Linden drove that gave rise to the present lawsuit. CNH America LLC, (Case) installed the seat belt on the dozer at its Burlington, Iowa, plant. Case sold and delivered the dozer to an Atlanta, Georgia, company in January 1997; and Baker Woods Construction, a Georgia company, bought the dozer in 1998. Linden, then a resident of Georgia, was driving the dozer near Douglasville, Georgia, on March 12, 2007, when it overturned and Linden was injured. Linden sued IMMI and Case in the Northern District of Georgia on May 29, 2007, but voluntarily dismissed that complaint in March 2008. Linden then moved to Iowa.

On January 30, 2009, Linden commenced this diversity jurisdiction lawsuit alleging strict products liability claiming IMMI's seat belt was defective in its design, manufacture, warnings, and instructions as well as alleging that IMMI was negligent. In the present motion, IMMI argues that under Iowa choice-of-law analysis, the statute of repose in either Indiana, Ind.Code Ann. § 34–20–3–1(a)–(b) (West 2009), or Georgia, Ga.Code Ann. § 51–1–11(b)–(c) (West 2009), should apply; Linden resists, arguing that the Iowa statute of repose, Iowa Code § 614.1(2A) (2009), should apply.

## II. DISCUSSION

### A. Standard for Summary Judgment

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Myers v. Lutsen Mtns. Corp.,* 587 F.3d 891, 893 (8th Cir.2009); Fed.R.Civ.P. 56(c). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Miner v. Local 373,* 513 F.3d 854, 860 (8th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). On a motion for summary judgment, the Court views the evidence and inferences in the light most favorable to the nonmovant. *Id.* The nonmovant "must set forth specific facts sufficient to raise a genuine issue for trial" and "may not rest upon mere denials or allegations in the pleadings." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc.,* 382 F.3d 852, 856 (8th Cir.2004).

### B. Choice of Law

▮ "[T]he issue of the appropriate choice of law is a question of law for the

---

1. A similar motion has been filed by CNH America LLC and is addressed by separate order.

2. On a motion for summary judgment, the Court views the evidence and inferences rea-

sonably drawn therefrom in the light most favorable to the nonmoving party. *E.g., Takes v. Life Inv. Ins. Co. of Am.,* 582 F.3d 886, 893 (8th Cir.2009). Otherwise, the Court accepts facts not in dispute.

court." *Jones v. Winnebago Indus., Inc.*, 460 F.Supp.2d 953, 959 (N.D.Iowa 2006) (citing cases). "Federal courts sitting in diversity apply the choice-of-law rules of the forum state" to determine the pertinent substantive law. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir.2009). Under Iowa law, a statute of repose is "properly characterized as substantive, rather than procedural." *Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987). However, choice-of-law analysis is only undertaken when a true conflict exists between the possible governing laws. *Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n. 7 (8th Cir.2004).

A true conflict exists when there is an actual difference in the relevant laws of the different states. *Consul Gen. of Rep. of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir.2003). Applying the facts in this case reveals a true conflict. Case sold and delivered the dozer more than ten years but less than fifteen years before the accident that injured Linden occurred. Neither the Indiana nor the Georgia statute of repose allows Linden to commence an action more than ten years after the sale or delivery of the dozer.[3] The Iowa statute of repose, on the other hand, allows Linden to commence an action up to fifteen years after the first purchase of the dozer.[4] Thus, here a true

---

**3.** Indiana's statute of repose contains the following relevant provisions:

(a) [T]his section applies in any product liability action in which the theory of liability is negligence or strict liability in tort. (b) Except as provided in section 2 of this chapter, a product liability action must be commenced: ... (2) within ten (10) years after the delivery of the product to the initial user or consumer.

Ind. Code Ann. § 34–20–3–1(a)–(b) (West 2009).

Georgia's statute of repose contains the following relevant provisions:

(b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained. (2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury. (3) A manufacturer may not exclude or limit the operation of this subsection. (c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years

from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability.... Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

Ga. Code Ann. § 51–1–11(b)–(c) (West 2009).

**4.** Iowa's statute of repose contains the following relevant provisions:

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

. . . .

2A. With respect to products.

a. Those founded on the death of a person or injuries to the person or property brought against the manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, or any other alleged defect or failure of whatever nature or kind, based on the theories of strict liability in tort, negligence, or breach of an implied warranty shall not be commenced more than fifteen years after the product was first purchased, leased, bailed, or installed for use or consumption unless expressly war-

conflict arises because Linden's action would be barred under Indiana or Georgia law but not under Iowa law. Therefore, the Court will undertake the choice-of-law analysis. *See Jones*, 460 F.Supp.2d at 959.

■ Iowa has adopted the Restatement (Second) of Conflict of Laws "most significant relationship" methodology for choice-of-law issues. *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). The most significant relationship test is outlined in the Restatement as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). As stated in the test, Iowa incorporates the provisions of § 6 of the Restatement as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971); *Veasley*, 553 N.W.2d at 897–98. The Court will evaluate each factor in turn.

### 1. Place of Injury

IMMI argues that this factor unequivocally favors application of Georgia's law while Linden argues that Georgia was merely a fortuitous location for the injury and is not significant in a choice-of-law analysis.

■ The place of injury is of little importance when the state wherein the injury occurred has no other interest in the case. *See* Restatement (Second) of Conflict of Laws § 145 cmt. e ("[T]he place of injury will not play an important role ... when the place of injury can be said to be fortuitous or ... bears little relation to the

ranted for a longer period of time by the manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of the product. This subsection shall not affect the time during which a person

found liable may seek and obtain contribution or indemnity from another person whose actual fault caused a product to be defective.

Iowa Code § 614.1(2A) (2009).

occurrence and the parties with respect to the particular issues."); *Cameron*, 407 N.W.2d at 597 (finding that the Iowa statute of repose applied rather than Nebraska law in an automobile accident negligence case because Nebraska was merely the place of impact and none of the parties resided in Nebraska). Furthermore, "Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action." *Veasley*, 553 N.W.2d at 897.

Citing the comments to Restatement (Second) of Conflict of Laws, IMMI argues that the place of injury is important in a personal injury choice-of-law analysis, reasoning that "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury." Restatement (Second) of Conflict of Laws § 145 cmt. e. Yet, with an ironic twist, IMMI asserts that the place of injury should be given significant weight in this Court's analysis to allow IMMI to escape liability. Because this is a product liability action, following the Restatement's directive to evaluate the contacts according to their relative importance with respect to the particular issue, the place of injury is much less important than the place where the conduct that caused the injury occurred. *Id.* The Court does not give the place of injury decisive weight in recognition that Iowa has abandoned the *lex loci delicti* rule for choice-of-law analysis. *Veasley*, 553 N.W.2d at 897. With a stronger focus on where the challenged conduct occurred in a product liability action,[5] the Court has a diminished concern about Linden's possibly strategic relocation from Georgia to Iowa and thus accepts the current state of the record that

no party is currently a resident of Georgia.[6]

### 2. Place Where Conduct Causing Injury Occurred

■ IMMI argues that it designed, manufactured, and marketed the seat belt in Indiana. Linden asserts that the final product was made or assembled in Iowa, and design decisions that led to the seat belt failure were made in Iowa.

Federal courts interpreting Iowa law have held that the place where conduct causing the injury occurred in products liability cases is "where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred." *Jones*, 460 F.Supp.2d at 970; *Johnson v. Am. Leather Specialties Corp.*, 578 F.Supp.2d 1154, 1167 (N.D.Iowa 2008). "In addition, in a products liability case, the place where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred is of relatively greater weight than the 'place of injury.'" *Johnson*, 578 F.Supp.2d at 1167 (citing Restatement (Second) of Conflict of Laws § 145(2), cmt. e ("[W]hen the place of injury . . . is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law.")).

As the parties dispute the location of the design, manufacture, and marketing of the allegedly defective product, the Court must identify the allegedly defective product for purposes of the claims against IMMI. IMMI insists that the product at issue in the claims against IMMI is the seat belt only, which was designed, devel-

---

**5.** *See* text at pp. 875–77, *infra*.

**6.** The record does contain some reference to Linden's intention to return to Georgia, but the Court examines the record based upon the current fact rather than potential subsequent behavior.

oped, tested, and manufactured in Indiana. Linden, on the other hand, argues that the defective product is the dozer with the component seat belt installed. Linden indicated at oral argument that the seat belt did not serve any purpose until it was installed in the dozer and did not become dangerous until it was installed in the dozer. IMMI asserts that the seat belt is an off-the-shelf product;[7] but Linden counters that IMMI and Case cooperated in the selection and fitting of the seat belt to the dozer, and, thus, the seat belt should not be considered alone.

In his complaint, Linden alleges that the seat belt was unreasonably dangerous when IMMI designed and manufactured it or "at the time it left [IMMI]'s control to be assembled by [Case] in Iowa." Compl. ¶ 34. Seat belts were shipped "F.O.B. Westfield, Indiana." Def. App. 38. Thus, the seat belts left IMMI's control in Indiana, already allegedly unreasonably dangerous but not yet incorporated into the dozer. Therefore, the Court will consider the seat belt alone as the claimed defective product for purposes of this motion and this Defendant.

In *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867 (8th Cir.1974), a fuse manufactured in Iowa was incorporated into a grenade in Texas that exploded in a soldier's hand in Georgia. *Id.* at 869. The Eighth Circuit applied Iowa's then controlling most significant relationship test to determine the applicable law in a product liability action. *Id.* at 869–71. The court determined that Iowa law should apply, even though only the fuse was manufactured in Iowa.[8] Likewise, the place of design, manufacture, and marketing of the seat belt—in this case Indiana—is the relevant place where the conduct causing the injury occurred.

Linden asserts that the joint decisions IMMI and Case made in Iowa about placing the seat belt on the subject dozer establish that the conduct that caused the injury occurred in Iowa rather than Indiana because those decisions made the seat belt defective. Linden relies on *Jones v. Winnebago Indus., Inc,* for the proposition that the place where the finished product is designed and manufactured, in this case the dozer with the seat belt installed, is the relevant product to consider for this factor. In *Jones,* the defective product was a slide-out mechanism incorporated into a Winnebago recreational vehicle in Iowa. *Jones,* 460 F.Supp.2d at 959.

---

7. At oral argument, Linden moved to have his Statement of Facts (SOF) deemed admitted based on Local Rule 56(d). To do so would require the Court to accept as true the statement that "[t]he ERIC buckle part at issue, part # 7675, was only shipped to CNH." Pl. SOF ¶ 66. The deposition testimony relied upon by Linden indicates that while model number FO7675 may have been assigned to Case shipments, the exact product, albeit with different part numbers, was purchased by multiple IMMI customers. Although the purpose of Local Rule 56(d) is a valid one that facilitates the Court's review of such motions, the Court will not deem admitted a fact so apparently contradicted by the record referenced in support of the specific statement of material fact. To this extent, the Court modifies the express language contained in Local Rule 56(d). *See* L.R. 1(d).

8. The Court notes that the decision in *Foster* does not consider applying Texas law, the state wherein the final product was assembled. However, the decision recognized that Texas had arguably relevant contacts with the case but still affirmatively held that Iowa law applied. *Foster,* 502 F.2d at 870. At argument, Linden asserted that *Foster* is distinguishable because the Eighth Circuit agreed with an alternative basis put forth by the district court for applying Iowa law. While that is true, the express holding in *Foster* is that the place of manufacture of the fuse is the determinative factor, and the Eighth Circuit merely agrees with the alternative basis in a footnote. *Foster,* 502 F.2d at 871 n. 2.

The slide-out mechanism was manufactured exclusively for Winnebago by another company using Winnebago engineers, and the court concluded that this activity took place in Iowa. *Id.* at 959, 970. *Jones* is distinguishable from the present case because IMMI did not design the seat belt in question exclusively for Case, nor does the record indicate that Case engineers designed the seat belt in Iowa. The record before the Court does not indicate how any decisions made in Iowa materially changed the design or manufacture of the seat belts before they left IMMI's control.[9]

Linden argues that the decision not to warn customers about the finite life of the seat belts was made in Iowa, thus linking IMMI's decision-making to Iowa. The record indicates that discussions between IMMI and Case about the finite life of the seat belt were based on tests done by John Deere that showed that the seat belt webbing deteriorated over time. The defect identified by Linden at oral argument, however, is that the placement of the belt allowed the buckle to rub under the circumstances of normal use in a way that eventually led to the buckle to fail. Nothing in the record indicates that *any* decisions were made to not warn customers about the defect alleged by Linden, let alone decisions in Iowa. Furthermore, nothing in the record references the defect asserted by Linden. Without any mention of the rubbing defect in the record, Linden has not generated a factual issue that joint decisions made by IMMI and Case in Iowa led to this defect.

Linden does not directly claim that IMMI made any design or manufacturing changes at Case's behest, rather he merely asserts that advice and input concerning the seat belts were received in Iowa. For the specific purposes of the conflict of laws analysis currently before the Court, that is not enough.

Based on the discussion above, this factor weighs heavily in favor of the application of Indiana law because this is a product liability action. *See Johnson,* 578 F.Supp.2d at 1167.

### 3. Domicile, Residence, Place of Incorporation, and Place of Business

■ The third factor used to determine which state has the most significant relationship with the lawsuit is the ubication of the parties. Restatement (Second) of Conflict of Laws § 145(2)(c). Section 145 comment e notes that the weight accorded to domicile, residence, place of incorporation, and place of business depends upon the extent to which they are "grouped" with other contacts. Restatement (Second) Conflicts of Laws § 145 cmt. e. The same comment also notes that a corporation's principal place of business is of more importance than its place of incorporation. *Id.* The Court will consider the residence of all parties to this motion.

---

9. The call report referenced in the record and at argument states, "We ... reviewed the comments made over the years on improvements or enhancements needed to add value to the customers [sic] product and operators [sic] station. This included the improved presentation of the buckle to the operator allowing single hand latching, improved performance, more flexible mounting options, more compact design, and improved value. We then introduced them to the new next generation CRS and showed them how we are complying to their wants and needs and enhancing the product for future production. All of the comments we received were very favorable; and one comment made was, only a seat belt manufacturer would have designed the CRS with webbing in it, Case would have designed a more mechanical system as we are now proposing." Sealed App. 1. The Court finds no support in this record for any joint undertaking with regard to the product or the alleged defect at issue.

IMMI's principal place of business and its state of incorporation are both Indiana, which groups with the second factor—the place where the injury causing conduct occurred. Linden argues, however, that because IMMI has done business in Iowa for decades, employs a product representative in Iowa, and sells products in Iowa, this factor should weigh heavily in favor of applying Iowa law. Due to ambiguous usage of the term "place of business" in § 145, the Court finds more persuasive that the principal place of business is the relevant place of business. *See id.* IMMI does business in Iowa, yet its business operations in Iowa are small compared to its operations in Indiana and are not considered more significant than IMMI's principal place of business for purposes of this choice-of-law analysis. Furthermore, even when IMMI's business dealings in Iowa are taken into account, such contacts do not group with any other § 145(2) factors. *Id.*

Linden further argues that this factor favors application of Iowa law because he is a resident of Iowa. IMMI asserts that Linden only moved to Iowa for litigation purposes and should be considered a resident of Georgia for purposes of this motion. IMMI avers that Linden's residence at the time of injury is the relevant inquiry. IMMI cites to various other jurisdictions in support of its argument. *See, e.g., Hall v. Gen. Motors Corp.,* 229 Mich.App. 580, 582 N.W.2d 866, 870 (1998) (after a survey of cases determining residence for choice-of-law purposes the court stated, "[t]he rationale that permeates these decisions is a judicial objective of preventing plaintiffs from forum shopping by post injury moves"); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 730 (1967) (Traynor, CJ) ("[Plaintiff's] residence and domicile at the time of the accident are the relevant residence and domicile. At the time of the accident the plans to change the family domicile were not definite and fixed, and if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged."). Linden's move may or may not have been motivated by this litigation. However, the Court finds the rationale of *Hall* and *Reich* persuasive; therefore, it considers Linden's residence to be Georgia for purposes of this portion of the conflict of laws analysis.

Thus, considering the residence of both Linden and IMMI, this factor favors application of either Indiana or Georgia law.

## 4. Place Where the Relationship Between the Parties is Centered

The parties agree, as does the Court, that there was no relationship between the parties relevant to consideration of this motion. *See* Restatement (Second) of Conflict of Laws § 145(2)(d) (fourth factor to be taken into account is "the place where the relationship, *if any,* between the parties is centered") (emphasis added); *see also Johnson,* 578 F.Supp.2d at 1168 (noting that Restatement contemplates that no relationship might exist and finding no relevant relationship between the parties such that the fourth factor did not favor application of any state's law). Therefore, this factor is neutral.

## 5. Summary of § 145 Factors

Under the foregoing analysis, it is clear that balancing the § 145 factors favors application of Indiana law. The place where conduct causing the injury occurred is Indiana, as is the principal place of business of IMMI. While the injury occurred in Georgia, and Linden resided in Georgia at the time of the accident, the place where conduct causing the injury occurred is given more weight than the place of injury. *Johnson,* 578 F.Supp.2d at 1167 (citing Restatement (Second) of

Conflict of Laws § 145(2), cmt. e). Based on the contacts in this case, Indiana has the most significant relationship to the occurrence and the parties in this case.

#### 6. More Significant § 6 Factors

Iowa choice-of-law analysis incorporates the principles of Restatement (Second) of Conflict of Laws § 6 in evaluating the contacts taken into account by § 145. *Veasley*, 553 N.W.2d at 897–98. The Court's ultimate determination must be which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1); *accord Veasley*, 553 N.W.2d at 898. Comment b to Restatement (Second) Conflicts of Laws § 145 states as follows:

> Because of the relative insignificance of [the protection of justified expectations, the basic policies underlying the particular field of law, and certainty, predictability and uniformity of result] in the tort area of choice of law, the remaining factors listed in § 6 assume greater importance. These remaining factors are the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied.

##### a. The Needs of the Interstate System

"Respect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a 'substantial connection' with the issue." *Veasley*, 553 N.W.2d at 899. The Iowa Supreme Court noted in analyzing this factor that the Iowa law at issue was "not so abnormal that an application of Iowa law would greatly disrupt interstate order." *Id.*

Linden argues that Iowa has a substantive connection with the issue because IMMI tested, helped fit, and discussed the seat belt with Case in Iowa, and Case built the dozer and installed the seat belt in Iowa. Linden also argues that Iowa's statute of repose is not an outlier when considering all statutes of repose in affect in the United States, and that some jurisdictions have no such limitation. IMMI argues that the claimed substantive connection is really not substantive at all because one of its customers merely incorporated its product into a dozer in Iowa.

Under the restrictions of the current analysis, the Court finds IMMI's Iowa connection is tenuous rather than substantive. The major aspects at issue for purposes of this motion—design, manufacture, and marketing (failure to warn)—happened in Indiana. Iowa's statute of repose cannot be considered abnormal as it coincides with the statute of repose of at least one other state. *See* Iowa Code Ann. § 614.1(2A); Tex. Code Ann., Civil Practice & Remedies § 16.012. Notwithstanding the non-abnormality of Iowa's statute of repose, this factor does not favor application of Iowa law over Indiana law because Iowa does not have a substantial connection with the issue. Based on the consideration of the § 145 factors, Indiana has the dominant interest; therefore, Indiana has an appropriate substantive connection with the product liability issues in this case. *See Johnson*, 578 F.Supp.2d at 1169–70.

##### b. Relevant Policies of the Forum and Other Interested States

The relevant policies of the forum and other states are the second and third significant § 6 factors to consider in a tort case. *Jones*, 460 F.Supp.2d at 973.

IMMI argues that Iowa has no interest in applying its law because IMMI is not an

Iowa resident, and Iowa courts have no interest in extending Iowa causes of action to non-residents. The authority cited by IMMI involves loss of consortium, which is more closely tied to residency than products liability, and IMMI does not explain why it is instructive in this case. *See Jackson v. Travelers Ins. Co.*, 26 F.Supp.2d 1153 (S.D.Iowa 1998). IMMI also argues that Indiana and Georgia have a great interest in applying their statutes of repose. Linden counters that Indiana's and Georgia's policies underlying their statutes of repose are not offended by applying Iowa law, and the policies underlying Iowa's statute of repose give Iowa a strong interest in applying its law.

The underlying purpose of Indiana's statute of repose shows

> a concern for the lack of reliability and availability of evidence after long periods of time and a public policy to allow manufacturers, after a lapse of a reasonable amount of time, to plan their affairs with a degree of certainty, free from unknown potential liability. Presumably there is also an underlying assumption that after ten years a product failure is due to reasons not fairly laid at the manufacturer's door.

*Estate of Shebel v. Yaskawa Elec. Am. Inc.*, 713 N.E.2d 275, 278 (Ind.1999) (citations omitted). Indiana's statute of repose is focused on providing Indiana manufacturers a degree of certainty regarding liability for their products. As such, Indiana policy favors the application of its statute of repose to IMMI, an Indiana company. Applying Iowa's statute of repose would be repugnant to the stated policy of Indiana's statute of repose.

Georgia's statute of repose was enacted to stabilize insurance underwriting and eliminate stale claims. *Love v. Whirlpool Corp.*, 264 Ga. 701, 449 S.E.2d 602, 605 (1994). The concern for stabilizing insurance underwriting was "generated by the open-ended liability of manufacturers." *Id.* The second purpose, eliminate stale claims, may have arisen out of concern for the courts or manufacturers; but since no Georgia manufacturer appears in this case, the purposes of Georgia's statute of repose would not be offended by applying another state's law, and this factor does not favor applying Georgia law.

Linden argues that since he is a resident of Iowa, Iowa has a great interest in fully compensating him as a tort victim. Since he states in his response [10] to Case in a parallel motion [11] that this § 6 factor only has particular concern for the state that has the dominant interest under § 145, his argument here is unavailing since the Court concluded that Indiana has the dominant interest under § 145. *See* Restatement (Second) Conflict of Laws § 145 cmt. b (relevant policies of interested states should be taken into account, "particularly of the state with the dominant interest in the determination of the particular issue"). Even if the Court had no question regarding Linden's residency for purposes of this motion and agreed with him that Iowa has an interest in fully compensating him as a tort victim, Indiana's interest in protecting IMMI under its statute of repose is equally compelling.

### c. Ease of Determination and Application of Law

Since application of any statute of repose is merely a mathematical exercise, this factor is neutral.

### 7. Other § 6 Factors

The Iowa Supreme Court recognized that the other § 6 factors may be of little

---

10. Clerk's No. 65, p. 11.

11. Clerk's No. 50.

importance in tort cases. *See Veasley,* 553 N.W.2d at 898–99; *Jones,* 460 F.Supp.2d at 974–75 (finding, in a products liability case applying Iowa choice-of-law rules, the remaining factors carried little to no weight). Accordingly, these factors are also neutral.

### 8. Summary

 Under Iowa's choice-of-law analysis, the Court finds that Indiana has the most significant relationship to the parties and issues in this case for purposes of this motion. IMMI designed, manufactured, and marketed the seat belt in Indiana, and Indiana has an interest in applying its product liability laws to products manufactured in Indiana. While Linden may be a current resident of Iowa, and the seat belt was incorporated into the dozer by Case in Iowa, those facts do not outweigh Indiana's interest manifested by application of the most significant relationship methodology. Accordingly, the Court will apply Indiana law to Linden's claims against IMMI.

### C. Application of Statute of Repose

Indiana's statute of repose bars any product liability action under strict liability or negligence to be commenced more than ten years after the product is delivered to the initial user. Ind. Code Ann. § 34–20–3–1 (West 2009). In this case, the seat belt was delivered to the initial user and incorporated into the dozer in January 1997. This suit was commenced in January 2009, more than twelve years after initial delivery. Therefore, Linden's claims against IMMI are barred as a matter of law.

### III. CONCLUSION

For the reasons stated, Defendant IMMI's Motion for Summary Judgment (Clerk's No. 49) must be **granted,** and all of Plaintiff's claims against IMMI are **dismissed.**

**IT IS SO ORDERED.**